UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY INGRAM, | ) |
| Plaintiff, | ) |
| vs. | ) No. 3:19-CV-0323-GCS |
| AARON CAMPBELL, GREGORY DAVIS and GARRETTE LEPOSKY, | ) |
| Defendants. | ) |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION

Now before the Court is Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Docs. 29, 30). Ingram opposes the motion (Doc. 33). Based on the following, the undersigned **DENIES** the motion for summary judgment on the issue of exhaustion of administrative remedies.

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Ingram filed his complaint for deprivations of his constitutional rights that occurred at Menard Correctional Center ("Menard"). Ingram alleges that while housed at Menard, officials subjected him to unconstitutional conditions of confinement by housing him in a segregation cell with no lights for 88 days (from October 16, 2017 to January 12, 2018).

After conducting a preliminary review pursuant to 28 U.S.C. § 1915A, Ingram was allowed to proceed on one claim against Campbell, John Doe 1 and John Doe 2 for subjecting him to unconstitutional conditions of confinement in violation of the Eighth Amendment (Doc. 8). Also in the Order, the Court added Frank Lawrence as a defendant in his official capacity only for the purpose of responding to discovery aimed at identifying the unknown defendants. (Doc. 8, p. 3). Thereafter, Ingram filed a first amended complaint identifying and substituting Garrette Leposky as John Doe 1 and Gregory Davis as John Doe 2 (Docs. 22, 24).

On October 31, 2019, Defendants filed a motion for summary judgment on the issue of failure to exhaust administrative remedies (Docs. 29, 30, 31). Ingram filed his opposition on November 12, 2019 (Doc. 33). As the motion is ripe, the Court turns to address the merits of the motion.

## FACTS

On January 9, 2018, Ingram filed a grievance concerning the issues in this lawsuit. Ingram names Campbell in the grievance. However, he does not name either Defendant Davis or Defendant Leposky. The grievance states in pertinent part:

> This is my third grievance about this situation. I am diagnosed with hearing voices, multipule [sic] personality disorder some type of schizophrenia, depression and bipolar disorders. Now since 10/16/17 Ive [sic] been locked in cell 823 without a working light. My gallery officer has put in multipule [sic] work orders and nothing has happened. Ive [sic] told officers on all three shifts about the situation. My 5 day officer (Campbell) has been the only one to try and help me."

(Doc. 30-1, p. 4). On March 27, 2018, Chairman Dave White of the Administrative Review Board ("ARB") denied Ingram's grievance finding that the issue was appropriately addressed by the facility administration (Doc. 30-1, p. 1).

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's

grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing
> on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies,
> and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent
> (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining
> that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Ingram was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures

specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## ANALYSIS

Defendants maintain that Ingram's January 2018 grievance regarding the issues in this lawsuit does not reference any action or inaction by any of the three Defendants, thus, Ingram failed to exhaust his administrative remedies against them.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned finds Defendants have not met their burden and that Ingram did exhaust his claim as to all three defendants. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must

at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013); *but see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n. 1 (7th Cir. Feb. 6, 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005)(citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, the undersigned finds that Ingram provided enough information to put the prison officials on notice of the nature of his claims. As to Campbell, Ingram *named* him in his January 8, 2018 grievance. Further, that grievance provides enough detail to inform the prison officials that Davis and Leposky were involved. As stated previously, the grievance states in part: "Ive [sic] told officers on all three shifts about the situation." As

such, the Court finds that Ingram did exhaust his administrative remedies against Defendants Campbell, Davis and Leposky.

## Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 29). Lastly, the Court **DIRECTS** the Clerk of the Court to **DISMISS** Frank Lawrence as a defendant in this matter as Lawrence was added in his official capacity only to help with the naming and identifying of the John Doe defendants (Doc. 8, p. 8).

**IT IS SO ORDERDED.**

**Date: January 14, 2020.**

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.01.14 15:41:05 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**